# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THE GRAY INSURANCE COMPANY,**

          **Plaintiff,**

**v.**                                           **Case No:   6:13-cv-401-Orl-40KRS**

**CONSTRUCTION MANAGEMENT**
**ASSOCIATES, LLC,**

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **RENEWED MOTION FOR FINAL JUDGMENT AFTER DEFAULT AS TO CONSTRUCTION MANAGEMENT ASSOCIATES, LLC, ONLY (Doc. No. 59)** |
| **FILED:** | **May 7, 2014** |

## I.    PROCEDURAL HISTORY.

      Plaintiff Gray Insurance Company ("Gray") initiated this case by filing a complaint against Construction Management Associates, LLC ("CMA"), James V. Blume, III, Amanda H. Blume, and Richard H. Stottler, Jr.   Doc. No. 1.[1]  Gray alleged that CMA was an underground utility and excavation contractor on various construction projects in Florida.   Gray issued the payment and

_____

[1] Gray later filed an amended complaint and a second amended complaint.   The amended complaint and second amended complaint were filed to add allegations regarding the citizenship of the parties sufficient for this Court to exercise diversity jurisdiction.   The causes of action and the factual allegations supporting each cause of action remained the same in each complaint.

performance bonds for CMA's work.   CMA, the Blumes and Mr. Stottler executed an indemnity agreement in favor of Gray.   Gray alleges that CMA and the Blumes also entered into a financing agreement with Gray. CMA did not fully perform its performance and payment obligations, resulting in claims being made to Gray against the Bonds.   Gray seeks to recover from the Defendants the amount it has paid under the Bonds with respect to these claims, monies advanced to CMA under the financing agreement, consultants' and attorneys' fees and costs.

In the complaint, Gray alleged the following causes of action against all Defendants:

Count I:        Breach of Contract as to the Agreement/Contractual Indemnity

Count II:       Breach of Contract as to the Financing Agreement

Count III:      Specific Performance

Count IV:       *Quia Timet*

Count V:        Common Law Indemnification

On May 17, 2013, Gray filed a motion for leave to substitute Lori Stottler as Personal Representative of the Estate of Richard H. Stottler, Jr., following Richard Stottler, Jr.'s death. Doc. No. 20.   On May 23, 2013, the Court granted the motion.   Doc. No. 21.

Gray filed returns of service reflecting that each Defendant had been properly served with process.   Doc. Nos. 26, 27, 28.

Lori Stottler appeared in the case through counsel.   On November 6, 2013, Gray and Stottler advised the Court that they amicably resolved all claims between them.   Doc. No. 55. On November 7, 2013, the Court dismissed the claims against Lori Stottler as the Personal Representative of the Estate of Richard Stottler, Jr., with prejudice.   Doc. No. 56.

The Blumes did not appear in the case.   On May 28, 2013, the Clerk of Court entered defaults against the Blumes at the request of Gray.   Doc. Nos. 25, 29, 30.   On September 18,

2013, an attorney filed a notice that the Blumes had filed a bankruptcy petition.   Doc. No. 50.
The Court stayed the case as to the Blumes.   Doc. No. 51.   On May 19, 2014, Gray filed a notice
of dismissal without prejudice of the claims against the Blumes.   Doc. No. 61.   On June 11,
2014, the Court dismissed the claims against the Blumes without prejudice.   Doc. No. 64.

CMA also did not appear in the case. On May 28, 2013, the Clerk of Court entered a
default against CMA at the request of Gray.   Doc. Nos. 25, 31. On May 7, 2014, Gray filed the
above-referenced motion in which it seeks entry of a final default judgment against CMA under
certain counts of the complaint.   This motion became ripe for resolution on June 11, 2014, when
the claims against the Blumes were dismissed.   *See* Doc. No. 64.

## II.     APPLICABLE LAW.

A court may enter a default judgment only if the factual allegations of the complaint,
which are assumed to be true, provide a sufficient legal basis for such entry.   *Nishimatsu Constr.
Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to
admit facts that are not well-pleaded or to admit conclusions of law.").   Therefore, in considering
a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to
determine whether plaintiff is entitled to" a default judgment.   *Fid. & Deposit Co. of Md. v.
Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations
relating to the amount of damages are not admitted by virtue of default.   Rather, the Court
determines the amount and character of damages to be awarded."   *Miller v. Paradise of Port
Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).   If a default judgment is warranted, the
court may hold a hearing for the purposes of assessing damages.   Fed. R. Civ. P. 55(b)(2); *see
also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).   However, a hearing is not

necessary if a party submits sufficient evidence to support the request for damages.  *See Smyth*, 420 F.3d at 1232 n.13.

## III.    RELEVANT ALLEGATIONS OF THE COMPLAINT.

Gray is a surety company that issues payment and performance bonds and stands as surety for selected contractors.  Doc. No. 1 ¶ 9.   CMA was an underground utility and excavation contractor on various construction projects in Brevard County and Volusia County, Florida.   In connection with its work, CMA from time to time required surety payment and performance bonds.  *Id.* ¶ 10.   To induce Gray to issue such bonds, CMA, James and Amanda Blume and Richard Stottler, Jr. (the "Indemnitors") entered into a General Indemnity Agreement in favor of Gray.  *Id.* ¶¶ 10-11; Doc. No. 1-1 at 1-13 ("General Indemnity Agreement"). The General Indemnity Agreement was executed by CMA through James Blume, as its Partner/Manager or Member.   Doc. No. 1-1 at 6.   The Indemnitors' undertaking of the various responsibilities and obligations set forth in the General Indemnity Agreement were absolute conditions precedent and prerequisites to Gray issuing any bonds naming CMA as a principal.   Doc. No. 1 ¶ 12.

Under the Indemnity Agreement, CMA agreed, among other things, to hold Gray harmless from all loss, liability, damages and expenses, including court costs, interest and attorney's fees, which Gray incurred or sustained under the following circumstances:

(a)     because of having furnished any Bond;

(b)     because of the failure of an Indemnitor to discharge any obligations under the General Indemnity Agreement;

(c)     in enforcing any of the provisions of the General Indemnity Agreement;

(d)     in pursuing the collection of any loss incurred under the General Indemnity Agreement;

- 4 -

(e)      in the investigation of any claim submitted under any Bond; or

(f)      any expenses related to the defense of the Bond(s).

Doc. No. 1 ¶ 13; Doc. No. 1-1 at 1-13.   The General Indemnity Agreement applies to all bonds issued by Gray.   Doc. No. 1-1 at 1.

Gray issued at least 29 bonds, which are identified in the complaint (the "Bonds"), securing CMA's performance and payment obligations on various projects commissioned by various governmental entities.   Doc. No. 1 ¶¶ 16-17.   CMA did not fully perform its obligations on some or all of the projects.   As a result, Gray received a number of claims against the Bonds (the "Claims") and/or funded CMA in its completion of certain projects.   *Id.* ¶ 17.

Because CMA did not resolve the Claims, Gray was forced to hire consultants and attorneys to respond to, investigate, and defend against the various Claims.   *Id.* ¶ 18.   Gray alleged that it incurred $1,071,505.57 in costs to resolve the Claims.   *Id.* ¶¶ 19-20.   Its damages are continuing in nature.   *Id.* ¶¶ 20, 22.

Gray demanded that CMA and the other Indemnitors provide it indemnification under the General Indemnity Agreement for the losses it suffered as a result of issuing the Bonds.   Neither CMA nor the other Indemnitors provided monies to Gray under the General Indemnity Agreement.   *Id.* ¶ 21.

On May 14, 2012, CMA and the Blumes entered into a Financing Agreement with Gray. *Id.* ¶ 24; Doc. No. 1-1 at 15-27 ("Financing Agreement").   The Financing Agreement, which is attached to the complaint, provides that Gray was willing to consider requests for financial assistance to aid CMA in completing the projects for which Gray had issued Bonds.   Under the Financing Agreement, CMA and the Blumes agreed, among other things, to sign a promissory note agreeing to repay Gray for all monies it advanced or paid.   Doc. No. 1-1 at 16.   Under the

Financing Agreement, interest would run at the rate of 8% per annum on the amounts paid by Gray from the date of each payment.   *Id.*   The Financing Agreement did not impair, alter or modify any of Gray's rights under the General Indemnity Agreement.   Doc. No. 1 ¶ 24; Doc. No. 1-1 at 15-27.   James Blume executed the Financing Agreement on behalf of CMA. Doc. No. 1-1 at 25.   The copy of the Financing Agreement attached to the complaint is not executed by Gray, although Gray alleges that it entered into the Financing Agreement.   Doc. No. 1 ¶ 24; Doc. No. 1-1 at 27.   Gray provided funds to CMA.   Doc. No. 1 ¶ 17; Doc. No. 1-1 at 14.   As of the date of filing the complaint, Gray alleges that CMA and the Blumes had not complied with the repayment terms of the Financing Agreement.   *Id.* ¶ 25.

## IV.    ANALYSIS.

Gray seeks a final default judgment against CMA under Count I for breach of the General Indemnity Agreement and under Count II for breach of the Financing Agreement.[2]   Accordingly, these are the only causes of action I will address.

### A.    *Liability.*

#### 1.    Count I – Breach of the General Indemnity Agreement.

The General Indemnity Agreement does not contain a choice-of-law provision. In general, a federal court in a diversity case must apply the state conflict of law principles that courts of the state in which it sits would apply.   *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).   As this case is before the Court on diversity grounds, Florida choice-of-law rules apply. *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1319 (M.D. Fla. 2011) ("A federal

---

[2] It appears that Gray will abandon the other causes of action against CMA in the event a default judgment is entered as to Counts I and II.

court sitting in diversity applies the choice of law rules of the forum state."); *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1302 (S.D. Fla. 2008).

When a contract is silent on the choice of law, "Florida's established rule for choice of law governing the validity and interpretation of contracts looks to the law of the place of contracting and the law of the place of performance." *Morgan Walton Props., Inc. v. Int'l City Bank & Trust Co.*, 404 So. 2d 1059, 1061 (Fla. 1981).   The General Indemnity Agreement reflects that CMA, through James Blume, executed it before a Florida notary.   Doc. No. 1-1 at 6.   Gray alleges in the complaint that the General Indemnity Agreement related to work to be performed on projects in Florida. Accordingly, because the General Indemnity Agreement was "executed in Florida for work to be performed in Florida, under Florida choice of law rules, Florida substantive law applies." *See Liberty Mut. Ins.*, 534 F. Supp. at 1302.

Under Florida law, a claim for breach of an indemnity agreement is evaluated under the law governing breach of contract.   *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999).   To establish breach of contract, Gray must allege facts that establish the following:   1) existence of a valid contract; 2) material breach of the contract; and, 3) damages resulting from the breach.   *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th Dist. Ct. App. 2000).   By defaulting, CMA admits all the well pleaded allegations of fact in the complaint.   *Nishimatsu Constr. Co.*, 515 F.2d at 1206.

A contract exists under Florida law in the presence of an offer, acceptance, consideration, and a sufficient specification of essential terms.   *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1326 (M.D. Fla. 2012).   Gray alleges that to induce it to issue the Bonds, CMA agreed to provide Gray with the General Indemnity Agreement. Gray alleges that it accepted that offer as a condition precedent to issuing the Bonds.   CMA, through Mr. Blume, executed the

General Indemnity Agreement. Gray issued the Bonds, which establishes the necessary consideration.  *See* Doc. No. 1-1 at 1 ("By the execution of this [General Indemnity] Agreement, the Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration of the furnishing, procuring or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following: . . . ."). The General Indemnity Agreement sufficiently specifies the essential terms of the agreement. These allegations are sufficient to establish the existence of a contract.

As to the second and third elements of breach of contract, the General Indemnity Agreement requires, among other things, that CMA indemnify and hold Gray harmless from all loss, liability, damages and expenses which Gray incurs or sustains because of having furnished any Bond.   Gray alleges that Claims have been made against the Bonds and that it has paid more than $1 million in costs to resolve those Claims.   Gray further alleges that CMA breached the General Indemnity Agreement by failing to reimburse Gray for these losses as required by the General Indemnity Agreement.   These allegations are sufficient to establish breach of the contract and damages resulting from the breach.

Therefore, the well-pleaded allegations of the complaint, which CMA is deemed to have admitted, are sufficient to establish that CMA is liable for breach of the General Indemnity Agreement.

     2. <u>Count II – Breach of the Financing Agreement</u>.

The Financing Agreement provides that it is governed by Florida law.   Doc. No. 1-1 at 22. The same elements of breach of contract, discussed above, apply to the claim that CMA breached the Financing Agreement.

CMA offered to enter into the Financing Agreement in exchange for Gray considering requests for financial assistance on the projects for which it had issued Bonds.   Gray alleges that it accepted that offer and provided funds to CMA.   The Financing Agreement sufficiently specifies the terms of the agreement.   These allegations are sufficient to establish the existence of a contract.

In the Financing Agreement, CMA agreed to sign a Promissory Note "agreeing to repay the Surety for all advances, payments of claims, and actual expenses, attorney's fees and costs." Doc. No. 1-1 at 16.   Gray alleges that CMA breached the Financing Agreement by failing to repay all monies paid by Gray.   For purposes of a default judgment, these allegations are sufficient to establish breach of the Financing Agreement.

Finally, Gray alleges that as a result of the breach of the Financing Agreement, it suffered damages and losses including attorneys' fees, consultants' fees and other costs.   These allegations are sufficient to establish that Gray was damaged as a result of breach of the Financing Agreement.

Therefore, the well-pleaded allegations of the complaint, which CMA is deemed to have admitted, are sufficient to establish that CMA is liable for breach of the Financing Agreement.

B.      *Damages*.

Gray submitted the Affidavit of Christina Kocke in support of its request for an award of damages.   Doc. No. 59-1. Kocke avers that she is the Surety Claims Manager for Gray.   *Id.* ¶ 1.

1.      Payments Made to Settle Claims and Fund the Bonded Projects.

Kocke avers that Gray loaned CMA $691,204.61 as of July 17, 2012 under the terms of the Financing Agreement.   *Id.* ¶ 10.   Neither CMA nor the Blumes repaid that money.   *Id.*

Kocke also avers that it settled the Claims against the Bonds.   It paid claimants a total of $144,666.55, with the last payment being made on January 14, 2014.   CMA did not reimburse Gray for these payments.  *Id.* ¶ 13.

Gray was able to recover $171,851.29 in contract balances from the bonded projects and from other Indemnitors, which it deducts from its damages calculation.   *Id.*

Kocke's affidavit is sufficient to establish damages in the total amount of $664,019.87 for payments to settle Claims and fund the bonded projects, as follows:

| | |
|---|---|
| Claims Paid: | $144,666.55 |
| Funding to CMA: | $691,204.61 |
| Less Recovered Funds: | ($171,851.29) |
| Total Damages | $664,019.87 |

    2.    <u>Consultants' Fees and Attorneys' Fees and Costs</u>.

Kocke avers that Gray incurred consultants' fees in the amount of $278,807.41 in procuring the completion of certain bonded projects and in investigating and resolving Claims. She further avers that that Gray incurred attorneys' fees and costs in the amount of $71,409.77 in investigating and resolving Claims.   Doc. No. 59-1 ¶ 13.   She did not aver that these fees were reasonable, and she did not attach to her affidavit vouchers, billing statements or evidence that the fees incurred were actually paid by Gray.

Kocke relies on paragraph 6 of the General Indemnity Agreement to support this portion of Gray's damages claim.  *Id.* ¶ 8.   Paragraph 6 of the General Indemnity Agreement provides, in pertinent part, as follows:

> The Indemnitors will indemnify, exonerate and hold the Surety harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interests and attorney's fees which the Surety incurs or sustains . . . .   Vouchers or other evidence of such payments, including records of any nature maintained by the

Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

Doc. No. 1-1 at 2.

Florida courts interpret indemnification agreements to require an award of only reasonable fees and costs. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.,* No. 08-61868-CIV, 2009 WL 4110110, at *2 (S.D. Fla. Nov. 24, 2009); *R.W. King Constr. Co v. City of Melbourne*, 384 So. 2d 654, 655 (Fla. 5th Dist. Ct. App. 1980) ("We construe the contractual [indemnification] obligation to be one for the payment of reasonable attorney's fees . . . .); *Sork v. United Benefit Fire Ins. Co.*, 161 So. 2d 54, 56 (Fla. 3d Dist. Ct. App. 1964).

Gray has not presented any evidence that the fees and costs of its consultants and attorneys are reasonable. Moreover, Kocke's attestation that Gray incurred consultants' fees and attorneys' fees and costs is not *prima facie* evidence of the amount of fees and costs Gray actually paid because the General Indemnity Agreement provides that such evidence would be in the form of vouchers or other business records.   Without evidence of the work performed and the fees and costs charged to and paid by Gray, the Court cannot determine whether the fees and costs Gray seeks are reasonable. *See R.W. King Constr. Co.*, 384 So. 2d at 655 (surety submitted affidavit from attorney outlining in detail the services rendered and the time spent).

Accordingly, the issue of the reasonable amount of consultants' fees and attorneys' fees and costs that Gray may be awarded under the General Indemnity Agreement must be resolved at trial. *See Sork*, 161 So. 2d at 556

3.      Unpaid Premiums.

Kocke also avers that CMA owes Gray unpaid Bond premiums in the amount of $621.98. Doc. No. 59-1 ¶ 14.   She does not cite a provision in the General Indemnity Agreement or in the Financing Agreement providing for payment of Bond premiums.   Counsel for Gray does not discuss the basis of Gray's claim for unpaid Bond premiums in the motion.   Therefore, I recommend that the Court not award this element of damages at this time and permit Gray to address this element of its damages at trial.

4.      Prejudgment Interest.

Finally, Gray seeks an award of prejudgment interest only with respect to the funds advanced under the Financing Agreement.   Florida law provides for prejudgment interest in contract cases in certain circumstances.   *See LSQ Funding Grp., L.C.*, 879 F. Supp. 2d at 1335.

In this case, the Financing Agreement provides for an award of prejudgment interest at the rate of 8% per annum on the amounts paid by Gray from the date of each payment.   Doc. No. 1-1 at 16.   Kocke avers that Gray loaned $691,204.61 to CMA as of July 17, 2012.[3]   Doc. No. 59-1 ¶ 10.   Due to monies it recovered from contract balances and other Indemnitors, prejudgment interest will run only as to the outstanding balance of $664,019.87.

Accordingly, I recommend that the Court award prejudgment interest on $664,019.87 at 8% per annum running from July 17, 2012.   The Court may require Gray to provide a calculation of the amount of prejudgment interest as of a date established by the Court before the Court enters final judgment in this case.

---

[3] In the motion, counsel for Gray states that Gray loaned these funds to CMA on June 12, 2012, citing to paragraph 10 of Kocke's affidavit.   Doc. No. 59 at 8.   In paragraph 10 of her affidavit, Kocke avers that the date these funds were loaned was July 17, 2012.   Doc. No. 59-1 ¶ 10.

## V.     RECOMMENDATION.

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court do the following:

A)     **GRANT in part** the Renewed Motion for Final Judgment After Default as to Construction Management Associates, LLC, Only (Doc. No. 59);

B)     **FIND** that Defendant Construction Management Associates, LLC is liable for breach of the General Indemnity Agreement (Count I) and breach of the Financing Agreement (Count II);

C)     **AWARD** damages in the amount of the payments made to settle the Claims, less the recovery obtained by Gray from other sources, in the total amount of $664,019.87;

D)     **AWARD** prejudgment interest on $664,019.87 at 8% per annum running from July 17, 2012;

E)     **DENY in part** the Renewed Motion for Final Judgment After Default as to Construction Management Associates, LLC, Only (Doc. No. 59) as to the request for an award of unpaid bond premiums and consultants' fees and attorneys' fees and costs without prejudice to establishing these damages at trial.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 7, 2014.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy